## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HICO FLEX BRASS COMPANY, INC., | ) | Case No. 10-54005 |
| | ) | |
| Debtor. | ) | Hon. A. Benjamin Goldgar |
| | ) | |

### NOTICE OF PROPOSED AGREED ORDER IN CONNECTION
### WITH FINAL HEARING ON CASH COLLATERAL MOTION

PLEASE TAKE NOTICE THAT, on February 28, 2011, Hico Flex Brass Company, Inc. (the "*Debtor*") filed the attached proposed Agreed Final Order Authorizing Use of Cash Collateral and Granting Replacement Lien and Adequate Protection to Bank of America, N.A. (the "*Proposed Order*").[1] The Proposed Order is submitted in connection with the final hearing on the Debtor's Emergency Motion for Authority to Use Cash Collateral (the "*Hearing*").

PLEASE TAKE FURTHER NOTICE THAT the Hearing will take place on March 9, 2011 at 10:00 a.m., before the Honorable A. Benjamin Goldgar, United States Bankruptcy Judge for the Northern District of Illinois, Eastern Division, or any judge sitting in his stead, in Room 613 of the Everett McKinley Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois.

PLEASE TAKE FURTHER NOTICE THAT, as required by Rule 4001-2 of the Local Rules for the Bankruptcy Court for the Northern District of Illinois, the Debtor hereby gives notice that pursuant to the Proposed Order, the Debtor is waiving any claim against, Bank of America pursuant to § 506(c) of the Bankruptcy Code applicable to the Bank's Collateral.[2]

Dated: February 28, 2011                    HICO FLEX BRASS COMPANY, INC.

                                            By: /s/ Sara E. Lorber
                                                 One of Its Attorneys

---

[1] Debtor will be seeking entry of the Proposed Order subject to its final verification of the prepetition indebtedness.

[2] All capitalized terms not defined herein shall have the meaning ascribed thereto in the Proposed Order.

William J. Factor (6205675)
Sara E. Lorber (6229740)
**THE LAW OFFICE OF
   WILLIAM J. FACTOR, LTD.**
1363 Shermer Road, Suite 224
Northbrook, IL 60062
Tel:   (847) 239-7248
Fax:   (847) 574-8233
Email: wfactor@wfactorlaw.com
       slorber@wfactorlaw.com

## CERTIFICATE OF SERVICE

I, Sara E. Lorber, an attorney, thereby certify that, on February 28, 2011, pursuant to

Section II, B, 4 of the Administrative Procedures for the Case Management/Electronic Case

Filing System and Fed.R.Civ.P. 5(a), I caused copies of the Notice of Filing of Proposed Agreed

Order in Connection with Final Hearing on Cash Collateral Motion to be served (1)

electronically through the Court's Electronic Notice for Registrants on all persons identified as

Registrants on the appended Service List, and (2) by U.S. mail on all persons identified on the

appended Service List:

/s/ Sara E. Lorber

## SERVICE LIST

**Registrants in the Case**
**(Service through ECF)**

| | |
|---|---|
| Leonard S. Becker | lenbecker@sbcglobal.net |
| James G Froberg | jgfroberg@lowis-gellen.com, tpeckham@lowis-gellen.com,jgfroberg@hotmail.com |
| Patrick S Layng | USTPRegion11.ES.ECF@usdoj.gov |
| Theodore Liebovich | liebovich-weber@comcast.net |
| Ben L. Schneider | ben@windycitylawgroup.com, windycitylawgroup@gmail.com |
| Scott N. Schreiber | sschreiber@stahlcowen.com |
| Pia N Thompson | pthompson@gouldratner.com, hmartinez@gouldratner.com |

**Twenty Largest Unsecured Creditors and Parties in Interest**

Blitt & Gaines P.C.
661 Glenn Avenue
Wheeling, IL 60090

Mesirow Insurance Services, Inc.
353 North Clark Street
Chicago, IL 60654

Blue Cross Blue Shield of Illinois
300 East Randolph Street
Chicago, IL 60601-5099

Neal, Gerber & Eisenberg, LLP
Two North LaSalle Street, Suite 1700
Chicago, IL 60602

Cbeyond
1520 Kennsington Road, Suite 300
Oak Brook, IL 60523

Nielsen Business Media
200 West Jackson Boulevard, Suite 2700
Chicago, IL 60606

Cbeyond
320 Interstate N. Pkwy SE, Suite 300
Atlanta GA 30339

Potratz & Hollander, PC
30 North LaSalle Street
Suite 3900
Chicago, IL 60602

Chase Card Services
Mail Code KY1-0900
6714 Grande Land Building 8, Suite 807
Louisville, KY 40213

Premium Assignment Corporation
401 South Carlton, Suite 201
Wheaton, IL 60187

Cook County Treasurer
118 North Clark Street, Suite 112
Chicago, IL 60602

Elk Grove Rubber Co.
99 Commercial Avenue
Addison, IL 60101

Federal Express Corp.
Revenue Recovery/Bankruptcy
3965 Airway Blvd., Module G, 3rd Floor
Memphis, TN 38116

Howard Simon & Associates
304 Saunders Road
Deerfield, IL 60015-3858

Santana Energy Services
120 E. Ogden Ave.
Hinsdale, IL 60521

Kutchins, Robbins & Diamond, Ltd.
1101 Perimeter Drive, Suite 760
Schaumburg, IL 60173

PT. Ever Age Valves Metals
Jl. Raya Sumengko-Gresik
Km 30.7
Wringinanom-Gresik (61176)
Jatim-Indonesia
E-mail: everage@sby.dnet.net.id
        everage@telkom.net
*Service by E-mail and Regular Mail*

Prudential
751 Broad Street
Law Department - 4th Floor
Newark, NJ 07102

Santana Energy Services
7701 San Felipe Boulevard, Suite 200
Austin, TX 78729-7644

Peter D. Broitman
ERISA Counsel
United States Department of Labor
Office of the Solicitor
230 South Dearborn Street, Room 844
Chicago, IL 60604

Schmidt, Salzman & Moran, Ltd.
111 West Washington Street, Suite 1300
Chicago, IL 60602

Internal Revenue Service
Mail Stop 5010 CHI
230 S. Dearborn Street
Chicago, IL  60604

Impact Sales Co.
804 Spring Valley Court
Schaumburg, IL 60193

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HICO FLEX BRASS COMPANY, INC., | ) | Case No. 10-54005 |
| | ) | |
| Debtor. | ) | Hon. A. Benjamin Goldgar |

### AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIEN AND ADEQUATE PROTECTION TO BANK OF AMERICA, N.A.

This matter having come before the Court on a noticed final hearing (the "*Final Hearing*") on the Debtor's Emergency Motion for Authority to Use Cash Collateral (the "*Cash Collateral Motion*") filed by Hico Flex Brass Company, Inc. (the "*Debtor*"), pursuant to §§ 361 and 363 of Title 11 of the United States Code (the "*Bankruptcy Code*"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Local Bankruptcy Rule 4001-2, seeking authority to use the cash collateral of Bank of America, N.A. as successor in interest by merger with LaSalle Bank N.A ("*Bank*");[1]

The Debtor and the Bank having agreed to the Debtor's use of the Bank's cash collateral on an interim basis pursuant to three agreed interim orders (Dkt. Nos. 15, 62 and 93) and the Debtor and the Bank, having stipulated and agreed as follows:

A.   As of the Petition Date (as defined herein), the Debtor was indebted to the Bank for certain outstanding loans (the "*Loans*") having an approximate principal balance of $1,240,563.76 plus accrued interest of $84,768.50 plus accrued late fees and other fees and charges of $7,741.40 for an aggregate total amount then due of $1,333,073.66 (the "*Prepetition*

---

[1] Capitalized terms not otherwise defined herein or in the Bankruptcy Code shall have the meaning ascribed thereto in the Cash Collateral Motion.

*Indebtedness*"). The Debtor acknowledges and agrees that the Debtor has no offsets, defenses or counterclaims to the Prepetition Indebtedness or any cause of actions against the Bank, and subject only to the Challenge Rights the Prepetition Indebtedness is not subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise.

      B.     The Loans are evidenced and secured by certain documents (collectively, the "Loan Documents"), including but not limited to the following particularly described documents:

      1.     Promissory Note dated 12/31/07 in the original principal amount of $2,000,000.00 (the "*Note*");

      2.     Business Loan Agreement dated 12/31/07 (the "*Business Loan Agreement*");

      3.     Commercial Security Agreement dated 5/12/08 (the "*Security Agreement*") under which the Debtor granted the Bank a first priority security interest (the "*Prepetition Liens*") in substantially all of the personal property and tangible and intangible assets of the Debtor including all Inventory, Goods, Chattel Paper, Accounts, Equipment and General Intangibles as more particularly described in the Security Agreement (the "*Bank Collateral*");

      4.     Uniform Commercial Code Financing Statements filed by the Bank with the Secretary of State of the State of Illinois on (i) 12/08/1993 as Filing No. 003197184 as amended and continued and (ii) 08/04/1995 as Filing No. 003432317 as amended and continued (collectively the "*UCC Statements*");

2

5.      Forbearance Agreement dated September 30, 2008 between and among the Debtor, Lila Isaacs ("*Individual Guarantor*"), Harold Isaacs Revocable Trust dated 09/12/2003 ("*Trust Guarantor*") and Bank (the "*Forbearance Agreement*");

6.      First Amendment To Forbearance Agreement Dated September 30, 2008 dated April 30, 2009 (the "*First Amendment to Forbearance Agreement*") between and among the Debtor, Individual Guarantor, Trust Guarantor and the Bank;

7.      Second Amendment To Forbearance Agreement Dated September 30, 2008 dated August 31, 2009 (the "*Second Amendment to Forbearance Agreement*") between and among the Debtor Individual Guarantor, Trust Guarantor, Neil Isaacs, Mark Isaacs and Bank; and

8.      All ancillary documents, instruments and agreements described in, related to or made in connection with each and any of the foregoing Note, Business Loan Agreement; Security Agreement; Forbearance Agreement; First Amendment to Forbearance Agreement and Second Amendment to Forbearance Agreement.

C.      The Prepetition Indebtedness is an allowed secured claim against Debtor in an amount of $1,333,073.66, exclusive of accrued and accruing (1) interest at the default rate of interest as set forth in the Loan Documents, (2) all fees, costs, expenses, and other charges due or coming due under the Loan Documents or in connection with the Prepetition Indebtedness (regardless of whether such fees, costs, interest and other charges are included in any Budget (as defined herein), and (3) all costs and expenses at any time incurred by Bank in connection with: (i) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (ii) the representation of Bank in the Case, including in defending any Challenge, but only to the extent allowable under the Loan Documents and § 506(b) of the

3

Bankruptcy Code (collectively "*Allowable 506(b) Amounts*"). The Bank has and retains all claims against the Debtor arising out of the Loan Documents, including for:

      1.      The Prepetition Indebtedness plus all Allowable 506(b) Amounts;

      2.      Post-petition interest, which accrues under the Note at a variable annual rate of a rate of Five Percent (5.0%) over the Prime Rate, as described in the Loan Documents, and as of the Petition Date equaled $284.30 per day, and which interest will continue to accrue through payment in full of the Note to the fullest extent allowed as an Allowable 506(b) Amount; and

      3.      Reimbursable and accruing charges including bank fees and out of pocket charges for legal fees and costs incurred by the Bank on and after the Petition Date to the fullest extent allowed as an Allowable 506(b) Amount.

      D.      Subject only to the Carve Out (as defined and described in Paragraph 1 and Paragraph 2 of this Order), any and all cash, checks, negotiable instruments, securities, documents of title, deposit accounts, proceeds, products or profits of property, receivables and other cash equivalents obtained by Debtor from all of its operations or which are proceeds of any interest in the Bank Collateral constitute "cash collateral" of the Bank under § 363(a) of the Bankruptcy Code (the "*Cash Collateral*"), except that Cash Collateral shall not include debtor-in-possession financing obtained by the Debtor from Lila Isaacs and any post-petition capital contribution made by Lila Isaacs to the Debtor (each a "*Shareholder Cash Infusion*"). The Bank Collateral extends to, and the Prepetition Indebtedness is secured by, the Cash Collateral pursuant to § 552(b) of the Bankruptcy Code.

      E.      The Debtor agrees to make the following payments to the Bank during the pendency of the captioned case (the "*Case*"): (i) monthly interest on the Bank's Prepetition

4

Claim at the regular, non-default interest rate specified in the Loan Documents with an initial

stipulated payment of $8,800.00 paid commencing with the month of December 2010 and with

the same amount payable on the last business day of each month thereafter ("*Interest*

*Payments*"); and (ii) all customary charges and fees imposed upon the Debtor in connection with

maintaining and administering any of the Debtor's accounts at the Bank, including any stop

payment charges or NSF fees (collectively, the "*Bank Payments*").

      F.      Debtor represents that the Budget attached hereto as Exhibit "A," or as such

Budget may be modified in writing with the prior written consent of the Bank, which consent

shall not be unreasonably withheld (the "*Budget*"), contains a good faith estimate of all expenses

that are reasonable and necessary for the operation of its business and the preservation of the

Collateral through the period for which the Budget runs, and therefore includes all estimated

amounts potentially chargeable to Bank under § 506(c) of the Bankruptcy Code. Accordingly,

Debtor hereby waives any claim against Bank pursuant to § 506(c) of the Bankruptcy Code, the

enhancement of collateral provisions of § 552 of the Bankruptcy Code or any other legal or

equitable doctrine (including, without limitation, unjust enrichment) applicable to the Collateral.

Debtor acknowledges and agrees that, it shall not use any of the Cash Collateral for any purpose

other than the specific expenses identified in the Budget or as such Budget may be modified in

writing with the prior written consent of the Bank and in accordance with the terms of this Order,

except as the Bank may otherwise agree in writing.

      G.      Debtor acknowledges and agrees that, it shall not use any of the Cash Collateral to

pay any compensation or bonuses to any officers or directors of Debtor (an "*Officer Payment*")

unless (i) such Officer Payment amounts have been specified and identified in the Budget <u>and</u>

(ii) there is cash available to permit such payment to be made after Debtor has made all other

monthly expenses set forth in the Budget including all Bank Payments. Starting on April 30,

2011, and continuing thereafter during the Case, Debtor also agrees to make a payment equal to

twenty-five percent (25%) of any Excess Collections, but in no event more than $5,000 each

month, to the Bank (the "*Bank Reimbursement Payments*") to be applied as follows: (i) the first

$25,000 in Bank Reimbursement Payments shall be applied to reduce the principal balance of the

Prepetition Indebtedness; and (ii) any Bank Reimbursements Payments in excess of $25,000

shall be provisionally applied to reimburse the Bank for any accrued and unpaid legal expenses

incurred by the Bank in connection with the Case, subject to § 506(b) of the Bankruptcy Code.

As used herein, the term "*Excess Collections*" shall mean the proceeds of all account receivable

and any other proceeds of Bank Collateral or other assets of the Debtor collected by or on behalf

of Debtor determined as of the last date of the month for the prior monthly period less the sum of

(i) all expenses identified and described in the Budget that have been incurred and paid during

the prior monthly period including any proposed payments that have yet to have been paid by

Debtor for that prior monthly period, (ii) all expenses identified and described in the Budget that

have been projected to be paid during the next monthly period, and (iii) all other payments

authorized by Court Order after the date of this Order required to be made by Debtor prior to

calculation date or payments that have been agreed to by the Bank and the Debtor after the date

of this Order.

      H.     As protection of the interest of the Bank in Cash Collateral and Bank Collateral

(the Cash Collateral and the Bank Collateral are hereinafter collectively referred to as the

"*Collateral*"), but not necessarily full adequate protection within the meaning of §§ 361 and 363

of the Bankruptcy Code, and for Debtor's use of Cash Collateral and the potential diminution in

value thereof, Debtor has agreed to provide the Bank with the Replacement Liens on the

Replacement Collateral as described in Paragraph 2 of this Order. For purposes of this Order,

"Avoidance Claims" shall mean all claims and causes of action of Debtor or Debtor's estate for

money or property recovered pursuant to §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551,

553 or 724(a) of the Bankruptcy Code, including Debtor's rights of setoff, recoupment,

contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-

bankruptcy law of any relevant jurisdiction) before deduction of any costs of collecting said

money or property including reasonable attorney fees and costs. For purposes of this Order,

"*Preference Recoveries*" shall mean any and all recoveries of money or property for the Estate

pursuant to §§ 547 or 550 of the Bankruptcy Code. For purposes of this Order, "*Avoidance*

*Recoveries*" shall mean any and all recoveries of money or property for the Estate pursuant to

any Avoidance Actions but excluding any Preference Recoveries.

I.       The Bank consents to a carve out of Cash Collateral for payment of post-petition

retainers and fees incurred to the professionals retained by Debtor pursuant to an order of the

Bankruptcy Court (the "*Carve Out Professionals*") in an amount not to exceed $100,000.00 (the

"*Carve Out*") as further described and qualified in Paragraph 2 of this Order. The Carve Out

with respect to such Carve Out Professionals: (1) shall equal an aggregate amount not to exceed

the lesser of (i) $100,000 or (ii) the aggregate amount of allowed fees and expenses that accrue

during the period commencing on the Petition Date and ending on the earlier of the Effective

Date of any Plan of Reorganization or the date that this Case is dismissed or converted to a

proceeding under Chapter 7 of the Code or September 30, 2011; and (2) shall be reduced dollar-

for-dollar by any payments of fees and expenses to such Carve Out Professionals., except that

the Carve Out shall not be reduced by the payment of any fees and expenses through prepetition

retainers obtained by such Carve Out Professionals. Any allowed professional fees shall be paid

7

first out of any prepetition retainer or property of the estate (other than property subject to an
unavoidable lien in favor of the Bank) before such payments are made from proceeds of the Cash
Collateral, Bank Collateral or Replacement Collateral.

       J.     As further consideration to the Bank with respect to its consent to the use of Cash
Collateral and to the Carve Out, to the extent the Debtor realizes cash proceeds from sources
other than the Bank Collateral during the Case, including from (i) any assets of Debtor that are
not subject to the Bank's lien (ii) Preference Recoveries and (iii) Avoidance Recoveries which
are not included within the scope of the Bank Collateral, but excluding any Shareholder Cash
Infusions (the "*Non-Bank Collateral*"), Debtor agrees that it shall use such proceeds of Non-
Bank Collateral exclusively to first (a) fund the payment of any professional fees covered by the
Carve-Out or reimburse the Bank for any prior use of the Carve-Out to pay such professional
fees and (b) pay Debtor expenses included in the Budget before resorting to use of Cash
Collateral and further shall reflect that use in any ongoing reports related to any monthly reports.
To the extent there is any excess cash proceeds from Non-Bank Collateral following the payment
of such expenses, Debtor agrees to reimburse Bank for any prior use of Cash Collateral to fund
any payment under the Budget for Officer Payments prior to payment in full of the Prepetition
Indebtedness and any Collateral Value Decrease Amount (defined below) during any period
prior to the date Debtor realizes net cash proceeds from Non-Bank Collateral, provided however
that such reimbursement shall be limited to no more than sixty six percent (66%) of any such
realized net cash proceeds from any Non-Bank Collateral.

       K.     The Bank consents to the terms of this Order and is entitled to the adequate
protection as set forth herein pursuant to §§ 361, 362, 363 and 364 of the Bankruptcy Code for
any decrease in the value of its interests in the Collateral from and after the Petition Date

("*Collateral Decrease Amount*"). Debtor represents that under the circumstances of this Case,

this Order is a fair and reasonable response to Debtor's request for Bank's consent to the use of

Cash Collateral and the entry of this Order is in the best interest of Debtor's Estate and its

creditors.

**THE COURT HEREBY FINDS:**

A.      Petition Date. On December 6, 2010 (the "*Petition Date*"), Debtor filed its

voluntary petition for relief under chapter 11 of the Bankruptcy Code.

B.      Debtor in Possession. Debtor has continued in the management and possession of

its business and property as debtor-in-possession pursuant to §§ 1107 and 1108 of the

Bankruptcy Code.  No Official Committee of Unsecured Creditors has been appointed in this

Case.

C.      Jurisdiction and Venue. This Court has jurisdiction over this proceeding and the

parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The Bank's Prepetition Claim. The Bank asserts and Debtor acknowledges that, as

of the Petition Date, the Bank holds an allowed secured claim against Debtor in the amount of

$1,333,073.66 exclusive of accrued and accruing Allowable 506(b) Amounts and that all cash

now or hereinafter in the possession of the Debtor other than any Shareholder Cash Infusions

constitutes "cash collateral" of the Bank under § 363 of the Bankruptcy Code.

**Based upon the foregoing stipulations of the Debtor and the Bank, as well as the**

**findings and conclusions, the Cash Collateral Motion, and the record before the Court with**

**respect to the Cash Collateral Motion; Debtor and the Bank having agreed to Debtor's use**

**of the Bank's Cash Collateral on a final basis pursuant to the terms of this Order; the Final**

9

Hearing having been held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(b)(2); due and proper notice of the Motion and the Final Hearing having been given to all parties entitled thereto; no objection to the Motion having been filed or served by any creditor or party in interest; and good and sufficient cause appearing therefore,

IT IS HEREBY ORDERED that:

1.  Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Order, the Debtor may use Cash Collateral to pay actual, ordinary, and necessary expenses set forth in the Budget attached hereto as Exhibit "A," or as such Budget may be modified in writing with the prior written consent of the Bank, which consent shall not be unreasonably withheld (the "*Budget*"), including the Bank Payments and any permitted Bank Reimbursement Payments. Interest Payments received by Bank shall be provisionally applied by the Bank as interest payments paid to the Bank and any Bank Reimbursement Payments used to reimburse the Bank for any legal expenses shall be provisionally applied for such purpose but in each case subject to such payments being reclassified and reallocated to principal payments in the event that it is later determined that the Bank is not entitled to receive interest on its Prepetition Indebtedness or reimbursement of legal fees as Allowable 506(b) Amounts. Absent further order of Court or the consent of the Bank, the Debtor shall not be authorized to use cash collateral to pay any items in excess of 115% of the total monthly budgeted cash disbursements and expense amount set forth in the Budget, in the aggregate, measured on a monthly basis. The Budget, and the Debtor's corresponding authority to use Cash Collateral, may be modified and extended with the prior notice to and prior consent and agreement of the Bank.

2.  Replacement Liens and Carve-Out.  As protection of the interest of the Bank in Cash Collateral, but not necessarily adequate protection within the meaning of §§ 361 and 363 of the Bankruptcy Code, for Debtor's use of Cash Collateral and the potential diminution in value

10

thereof, the Bank to the same and fullest extent and in the same priority that the Bank had valid

prepetition security interest in the Bank Collateral, the Court grants to the Bank, as additional

security for the Prepetition Indebtedness, replacement security interests in and lien upon all of

Debtor's property and assets, of any kind or nature whatsoever, whether now owned or hereafter

acquired by the Debtor including but not limited to, all assets of Debtor of a like kind included

within the definition of Bank Collateral, including all proceeds, products, rents and/or profits

thereof and including Avoidance Recoveries which are included within the scope of Bank

Collateral but expressly excluding any Preference Recoveries or any Shareholder Cash Infusions

(such collateral, collectively, the "*Replacement Collateral*," and such replacement security

interest and lien, the "*Replacement Lien*"). The Replacement Liens shall be enforceable in an

amount equal to the aggregate post-petition diminution in the value of the interest of the Bank in

the Bank Collateral, as such Bank Collateral existed as of the Petition Date (whether as a result

of physical deterioration, consumption, use, shrinkage, decline in market value or otherwise),

including, without limitation, the post-petition diminution in value of the Bank Collateral

resulting from Debtor's use of Cash Collateral as provided herein. Without limiting the

generality of the foregoing, the Bank lien on Replacement Collateral (a) shall be subject only to

non-avoidable, valid, enforceable and perfected liens and security interests in the prepetition

Bank Collateral and Replacement Collateral of Debtor, that existed on the Petition Date, (b) shall

at all times be senior to the rights of Debtor, and (c) shall be senior to any security interest in or

lien on the Replacement Collateral which is avoided or otherwise preserved for the benefit of

Debtor's estate under § 551 of the Bankruptcy Code or any other provision of the Bankruptcy

Code; provided however, the Bank consents to the Carve Out in an amount not to exceed

$100,000 for payment of post-petition retainers, fees and expenses allowed and payable to the

Carve Out Professionals. The amount of the Carve Out shall be reduced by the amount of any

loans or extensions of credit obtained by the Debtor that are not fully subordinated to the claims

of the Bank in a manner acceptable to the Bank. The unused amount of the Carve Out shall be

further reduced by the amount of any proceeds received by the Debtor from any Non-Bank

Collateral (other than Non-Collateral Cash) that has not been required to be applied by Debtor

for other permitted purposes as provided in this Order or any other order of the Court. No portion

of the Carve Out shall be used to pay for fees incurred in challenging the creation, validity, or

priority of the Bank Collateral or Replacement Liens, or asserting any claim against the Bank.

No portion of the Carve Out (and no Cash Collateral) may be used under this Order to pay any

fees or expenses incurred by any entity, including the Debtor, any Committee, if appointed, or

the Carve Out Professionals, in connection with claims or causes of action adverse to Bank's

interests in the Collateral, including (1) preventing, hindering or delaying Bank's enforcement or

realization upon any of the Collateral in the event of any failure of the Debtor to abide by the

terms of this Order or after the Bank has elected to exercise any of its rights and remedies against

Debtor; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the

terms hereof, or selling any Collateral without the Bank's consent; (3) objecting to or contesting

in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or

enforceability of the Prepetition Indebtedness or any mortgages, liens or security interests held

by Bank as collateral for the Prepetition Indebtedness or other indebtedness covered under the

Loan Documents or any other rights or interests of Bank arising from the Loan Documents, or in

asserting any claims or causes of action against the Bank in connection with the Case, including,

without limitation, any Avoidance Actions or (4) costs and expenses incurred by any

Committee's professionals or any third party in connection with the investigation of a potential

12

Challenge in accordance with Paragraph 7 of this Order; provided, further, however, that the

Carve Out may be used to pay fees and expenses incurred by the Carve Out Professionals in

connection with the negotiation, preparation and entry of this Order or any amendment hereto

consented to by Bank, and investigating the claims of the Bank prior to and within thirty (30)

days from the date of this Order. In consideration for the Carve Out, effective as of the Petition

Date, no claim of Carve Out Professionals may be asserted against the Collateral or Bank under

§ 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of § 552 of the

Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust

enrichment).The terms and provisions of this paragraph are intended by the Debtor to survive the

termination of this Order and shall remain binding on the Debtor, Bank, on any trustee or other

fiduciary subsequently appointed with respect to property of the or other fiduciary subsequently

appointed with respect to property of the Debtor's estate.

    3.    Validity and Perfection of Replacement Liens. The Replacement Liens on the

Replacement Collateral granted to the Bank shall be, and hereby are, deemed , valid, enforceable

and duly and automatically granted and perfected and recorded under all applicable federal or

state or local or other laws, statute, rule or regulation, and no notice, filing, mortgage

recordation, possession, further order or other act shall be required to effect such grant or

perfection of such Replacement Liens; provided, however, that notwithstanding the provisions of

§ 362 of the Bankruptcy Code, the Bank may, at its sole option, file or record or cause Debtor to

execute, file or record such UCC financing statements, notices of liens and security interest,

mortgages, or other similar documents as the Bank may require.

    4.    Adequate Protection Superpriority Claims. The Bank shall have all of the rights

accorded to it pursuant to § 507(b) of the Bankruptcy Code in respect of the adequate protection

provided herein.  Pursuant to §§ 503(b) and 507(b) of the Bankruptcy Code and to the extent of

the value of the prepetition Bank Collateral is less than the Prepetition Indebtedness as a result of

the Debtor's use of Cash Collateral, the Court grants to the Bank an allowed superpriority

administrative expense claim (the "*Adequate Protection Superpriority Claim*").  The Adequate

Protection Superpriority Claim shall have priority over all other administrative expenses

allowable under the Code pursuant to § 507(b) of the Bankruptcy Code, except for and to the

extent of the Carve Out, but shall be junior to all prior perfected and unavoidable secured claims

in property of the Debtor's estate as of the Petition Date and to the quarterly fees payable to the

United States Trustee pursuant to 28 U.S.C. § 1930; or the fees and expenses of the Clerk of this

Court.

   5. The Debtor's Obligations.  The Debtor shall maintain insurance of the kind

covering the Collateral, including, without limitation, life, fire, hazard, comprehensive, public

liability, and workmen's compensation as may be currently in effect, and obtain such additional

insurance in an amount as is appropriate for the businesses in which the Debtor is engaged.  The

Debtor shall comply with the stipulations and agreements with the Bank as described in this

Order.  So long as this Order is in effect, the Debtor shall not attempt to grant any entity, other

than the Bank, a lien or security interest in any assets of the Debtor, including Cash Collateral

and all other assets subject to the Replacement Liens and Adequate Protection Liens, pursuant to

§364 of the Bankruptcy Code or otherwise, having priority over or parity with the Bank' secured

interests in such assets without the prior express written consent of the Bank.

   6. Debtor Financial Reports.  The Debtor shall promptly provide the Bank with

copies of all financial reports made to the Court or to the United States Trustee, including,

without limitation, the monthly operating report for the prior month that the Debtor is required to

14

file with the United States Trustee's office, along with all reports of revenues and expenses, and

all other reports of financial data given by the Debtor to any other party, or reasonably requested

by the Bank. Without limiting the foregoing, Debtor shall provide the Bank, to the extent

available, with bi-weekly reports which include but are not limited to: (a) all sales generated by

the Debtor; (b) all accounts receivable generated by the Debtor and collected; (c) all monies

received by the Debtor; (d) an itemization of all of the Debtor's income and expenditures with

the same level of line item detail as set forth in the Budget and with an explanation of any

adverse variation to the Budget and (e) all other reports previously required and furnished by the

Debtor to the Bank under the Loan Documents. Without limiting the foregoing, the Debtor shall

provide the Bank with copies of any inventories or appraisals conducted or obtained covering

any and all goods including inventory and equipment located on the premises of Debtor.

7.    Challenge Rights. Notwithstanding anything herein to the contrary, the

Unsecured Creditors'Committee (the "*Committee*"), if appointed, shall have until the later of (i)

60 days from the date of appointment of the Committee and (ii) 75 days from the entry of this

Order, and (c) any other non-debtor party in interest (including, without limitation, any

receiver, administrator or trustee appointed or elected in the Case or any successor case

or in any jurisdiction) shall have until 75 days from the entry of this Order (the "*Investigation*

*Termination Dates*")to investigate the validity, perfection, and enforceability of the

repetition Liens or to assert any other claims or causes of action against the Bank. If the

Committee or any non-debtor party in interest determines that there may be a challenge by the

applicable Investigation Termination Date, the Committee or such other non-debtor party in

interest shall have only until the Investigation Termination Date to commence an adversary

proceeding or contested matter (each, a "*Challenge*"), as required by the applicable Bankruptcy

15

Rules, on behalf of the Debtor's estate setting forth the basis of any such Challenge. In no event

shall the filing of any such Challenge affect any of the rights, privileges, powers or remedies of the

Bank under this Order or the Loan Documents pending a ruling on such Challenge. If no

Challenge is filed on or before the Investigation Termination Dates (or such other later date as

extended by the written consent of the Debtor and the Bank), then without further order of the

Court, (i) the claims, liens and security interests of the Bank shall be deemed to be allowed for

all purposes in these Case and shall not be subject to challenge by any party in interest as to

extent, validity, priority or otherwise; (ii) the Debtor and its estate shall be deemed to have

waived, released and discharged Bank and its officers, directors, principals, attorneys,

consultants, predecessors in interest, and successors and assigns of and from any and all claims

and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to

the date of entry of this Order with respect to or in connection with the Prepetition Indebtedness,

the Bank Collateral, the Loan Documents or otherwise and (iii) the other agreements,

acknowledgements, releases and stipulations contained in this Order shall be irrevocably binding on

the Debtor's estate, the Committee, if appointed, and all other parties in interest (including, without

limitation, any receiver, administrator, or trustee appointed in the Case or any successor case or in

any jurisdiction) without further action by any party or this Court.

8.    Automatic Stay. The automatic stay of § 362 of the Bankruptcy Code shall be

modified to the extent necessary to implement the provisions of this Order.

9.    Miscellaneous Provisions. The Bank shall be conclusively presumed to have

requested adequate protection as of the Petition Date.  Nothing contained in this Order shall

preclude the Bank from seeking additional or different adequate protection (as defined in § 361

of the Bankruptcy Code), and this Order is without prejudice to the right of the Bank from

seeking to terminate or modify the automatic stay or the right of Debtor and other parties in

interest to oppose such relief requested.

10.    Bank shall not be deemed to have suspended or waived any of their rights or

remedies under this Order, the Loan Documents, the Prepetition Indebtedness, the Bankruptcy

Code, or applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by

a duly authorized officer of Bank, as applicable, and directed to Debtor.  No failure of Bank to

require strict performance by Debtor (or by any Trustee) of any provision of this Order shall

waive, affect or diminish any right of Bank thereafter to demand strict compliance and

performance therewith, and no delay on the part of Bank in the exercise of any right or remedy

under this Order, the Loan Documents, the Prepetition Indebtedness, the Bankruptcy Code, or

applicable nonbankruptcy law shall preclude the exercise of any right or remedy.  Further, this

Order shall not constitute a waiver by Bank of any of its rights under the Loan Documents, the

Bankruptcy Code or applicable nonbankruptcy law, including, without limitation their right to

later assert: (i) that its interests in the Collateral lack adequate protection within the meaning of

§§ 362(d) or 363(e) of the Bankruptcy Code or any other provision thereof; or (ii) a claim under

§ 507(b) of the Bankruptcy Code, except that, absent a material change of circumstances, the

Bank shall be prohibited from asserting that its interests in the Collateral is not adequately

protected if the Debtor is in compliance with this Order and any Budget approved by the Bank.

Further, this Order shall not constitute a waiver by Bank of any of its rights under the Loan

Documents, the Bankruptcy Code or applicable nonbankruptcy law with respect to any rights the

Bank may have against any non-Debtor obligors under the Loan Documents including the

Individual Guarantor, Trust Guarantor or Pledgors or with respect to any other collateral granted

17

to the Debtor by any non-Debtor Obligors including the Individual Guarantor, Trust Guarantor or Pledgors.

11.    Effect of Later Modification.  If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any rights or claims of the Bank arising hereunder prior to the effective time of such stay, modification or vacatur, or the validity and enforceability of any lien or priority authorized hereby.  Notwithstanding any such stay, modification or vacatur, any rights or claims of the Bank arising hereunder prior to the effective time of such modification, stay or vacatur and any lien or priority authorized hereby shall be governed in all respects by the original provisions of this Order, and the Bank shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, and all rights accorded by § 507(b) of the Bankruptcy Code.

12.    Additional Cash Collateral. The entry of this Order is without prejudice to the Debtor's right to seek authority to use additional Cash Collateral if the Debtor determines that the Cash Collateral use authorized by this Order is insufficient.

13.    Immediate Effectiveness of Authority. The Debtor's authority to use Cash Collateral under this Order shall be effective immediately and shall extend through the term of the Budget (as such Budget may be subsequently extended by agreement between the Debtor and the Bank).  To the extent any provision of this Order conflicts with any provision of the Cash Collateral Motion, the provisions of this Order shall control.

14.    Survival.  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with any order which may be entered in the Case: (a) confirming any chapter 11 plan accepted

18

by the Bank unless such plan specifically modifies or vacates this Order, (b) converting the Case

to a case under chapter 7 of the Code, (c) dismissing the Case, (d) withdrawing of the reference

from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of the

Case in this Court.  The terms and provisions of this Order, including, without limitation, the

rights granted Bank under §§ 364(c) and (d) of the Bankruptcy Code, shall continue in full force

and effect until all of the Prepetition Indebtedness plus any accrued and accruing Allowable

506(b) Amounts are indefeasibly paid in full in cash and discharged.

ENTER:


_____
United States Bankruptcy Judge


**AGREED TO:**

**HICO FLEX BRASS COMPANY, INC.**     **BANK OF AMERICA, N.A.**


By:   /s/ Sara E. Lorber                         By:   /s/ James G. Froberg
      One of its attorneys                              One of its attorneys
William J. Factor                                James G. Froberg
Sara E. Lorber                                   Lowis & Gellen LLP
The Law Office of William J. Factor, Ltd.        200 West Adams St., Suite 1900
105 W. Madison, Suite 400                        Chicago, IL 60606
Chicago, IL 60602


19

## EXHIBIT A
### Budget to Agreed Final Cash Collateral Order

|  | March 2011 | April 2011 | May 2011 | June 2011 |
|---|---|---|---|---|
| **CASH** | | | | |
| Beginning Cash Balance | $7,000.00 | $8,217.00 | $1,904.00 | $5,880.10 |
| Net Sales | $50,000.00 | $50,500.00 | $51,000.00 | $51,500.00 |
| Other Receipts | | | | |
| DIP Loan* | | $20,000.00 | | |
| **Total Cash:** | **$57,000.00** | **$78,717.00** | **$52,904.00** | **$57,380.10** |
| | | | | |
| **DISBURSEMENTS** | | | | |
| Rent | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 |
| Materials | $9,000.00 | $9,090.00 | $9,180.90 | $9,272.71 |
| Commissions | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
| Freight out | $2,500.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| Labor (warehouse) | $2,000.00 | $2,000.00 | $2,100.00 | $2,100.00 |
| Payroll taxes (warehouse) | $200.00 | $440.00 | $460.00 | $460.00 |
| Insurance | $1,833.00 | $1,833.00 | $1,833.00 | $1,833.00 |
| Interest expense | $8,800.00 | $8,800.00 | $8,800.00 | $8,800.00 |
| Office expenses | $150.00 | $200.00 | $200.00 | $200.00 |
| Office payroll & payroll taxes | $4,500.00 | $4,500.00 | $4,500.00 | $4,500.00 |
| Officer (N. Isaacs) payroll & payroll taxes | $5,000.00 | $7,100.00 | $7,100.00 | $7,100.00 |
| Postage & delivery | $50.00 | $100.00 | $100.00 | $100.00 |
| Repairs & maintenance | $100.00 | $100.00 | $100.00 | $100.00 |
| Telephone network | $500.00 | $500.00 | $500.00 | $500.00 |
| Utilities and waste management | $650.00 | $650.00 | $650.00 | $650.00 |
| Repayment of incorrect transfer to Lila Isaacs | | | | |
| Moving Expense | $5,000.00 | | | |
| Professional Fees | | $30,000.00 | | |
| | | | | |
| **TOTALS:** | | | | |
| **Cash:** | **$57,000.00** | **$78,717.00** | **$52,904.00** | **$57,380.10** |
| **Expenditures:** | **$48,783.00** | **$76,813.00** | **$47,023.90** | **$47,115.71** |
| | | | | |
| **Cash Balance:** | **$8,217.00** | **$1,904.00** | **$5,880.10** | **$10,264.39** |

\* DIP Loan proceeds are not part of the Bank's cash collateral.  Drawn downs on the DIP Loan will be made on as needed basis to meet expenditures