## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HICO FLEX BRASS COMPANY, INC., | ) | Case No. 10-54005 |
| | ) | |
| Debtor. | ) | Hon. A. Benjamin Goldgar |

## AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIEN AND ADEQUATE PROTECTION TO BANK OF AMERICA, N.A.

This matter having come before the Court on a noticed final hearing (the "*Final Hearing*") on the Debtor's Emergency Motion for Authority to Use Cash Collateral (the "*Cash Collateral Motion*") filed by Hico Flex Brass Company, Inc. (the "*Debtor*"), pursuant to §§ 361 and 363 of Title 11 of the United States Code (the "*Bankruptcy Code"),* Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Local Bankruptcy Rule 4001-2, seeking authority to use the cash collateral of Bank of America, N.A. as successor in interest by merger with LaSalle Bank N.A ("*Bank*");[1]

The Debtor and the Bank having agreed to the Debtor's use of the Bank's cash collateral on an interim basis pursuant to three agreed interim orders (Dkt. Nos. 15, 62 and 93) and the Debtor and the Bank, having stipulated and agreed as follows:

A.    As of the Petition Date (as defined herein), the Debtor was indebted to the Bank for certain outstanding loans (the "*Loans*") having an approximate principal balance of $1,240,563.76 plus accrued interest of $84,768.50 plus accrued late fees and other fees and charges of $7,741.40 for an aggregate total amount then due of $1,333,073.66 (the "*Prepetition*

---

[1] Capitalized terms not otherwise defined herein or in the Bankruptcy Code shall have the meaning ascribed thereto in the Cash Collateral Motion.

*Indebtedness*"). The Debtor acknowledges and agrees that the Debtor has no offsets, defenses or counterclaims to the Prepetition Indebtedness or any cause of actions against the Bank, and subject only to the Challenge Rights the Prepetition Indebtedness is not subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise.

  B.  The Loans are evidenced and secured by certain documents (collectively, the "Loan Documents"), including but not limited to the following particularly described documents:

  1.  Promissory Note dated 12/31/07 in the original principal amount of $2,000,000.00 (the "*Note*");

  2.  Business Loan Agreement dated 12/31/07 (the "*Business Loan Agreement*");

  3.  Commercial Security Agreement dated 5/12/08 (the "*Security Agreement*") under which the Debtor granted the Bank a first priority security interest (the "*Prepetition Liens*") in substantially all of the personal property and tangible and intangible assets of the Debtor including all Inventory, Goods, Chattel Paper, Accounts, Equipment and General Intangibles as more particularly described in the Security Agreement (the "*Bank Collateral*");

  4.  Uniform Commercial Code Financing Statements filed by the Bank with the Secretary of State of the State of Illinois on (i)  12/08/1993 as Filing No. 003197184 as amended and continued and (ii) 08/04/1995 as Filing No. 003432317 as amended and continued (collectively the "*UCC Statements*");

2

5.      Forbearance Agreement dated September 30, 2008  between and among the Debtor, Lila Isaacs ("*Individual Guarantor*"), Harold Isaacs Revocable Trust dated 09/12/2003 ("*Trust Guarantor*") and Bank (the "*Forbearance Agreement*");

6.      First Amendment To Forbearance Agreement Dated September 30, 2008 dated April 30, 2009 (the "*First Amendment to Forbearance Agreement*") between and among the Debtor, Individual Guarantor, Trust Guarantor and the Bank;

7.      Second Amendment To Forbearance Agreement Dated September 30, 2008 dated August 31, 2009 (the "*Second Amendment to Forbearance Agreement*") between and among the Debtor Individual Guarantor, Trust Guarantor, Neil Isaacs,  Mark Isaacs and Bank; and

8.      All ancillary documents, instruments and agreements described in, related to or made in connection with each and any of the foregoing Note, Business Loan Agreement; Security Agreement; Forbearance Agreement; First Amendment to Forbearance Agreement and Second Amendment to Forbearance Agreement.

9.       Copies of the Bank Loan Documents have been provided by the Bank to counsel for the Debtor.  The Bank Loan Documents have been reviewed by counsel for the Debtor.  Counsel for the Debtor has confirmed that the Bank Loan Documents created a valid security interest in the Bank Collateral and that such security interest in Bank Collateral where such perfection can be made by filing a UCC Financing Statement was perfected by filing the UCC Financing Statements.

C.      The Prepetition Indebtedness is an allowed secured claim against Debtor in an amount of $1,333,073.66, exclusive of accrued and accruing (1) interest at the default rate of interest as set forth in the Loan Documents, (2) all fees, costs, expenses, and other charges due or

coming due under the Loan Documents or in connection with the Prepetition Indebtedness (regardless of whether such fees, costs, interest and other charges are included in any Budget (as defined herein), and (3) all costs and expenses at any time incurred by Bank in connection with: (i) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (ii) the representation of Bank in the Case, including in defending any Challenge, but only to the extent allowable under the Loan Documents and § 506(b) of the Bankruptcy Code (collectively "*Allowable 506(b) Amounts*").  The Debtor and Bank have agreed that the Prepetition Indebtedness shall be deemed a scheduled Secured Claim there is no necessity for the Bank to file its Proof of Claim for its Prepetition Indebtedness in this Case. The Bank has and retains all claims against the Debtor arising out of the Loan Documents, including for:

      1.      The Prepetition Indebtedness plus all Allowable 506(b) Amounts;

      2.      Post-petition interest, which accrues under the Note at a variable annual rate of a rate of Five Percent (5.0%) over the Prime Rate, as described in the Loan Documents, and as of the Petition Date equaled $284.30 per day, and which interest will continue to accrue through payment in full of the Note to the fullest extent allowed as an Allowable 506(b) Amount; and

      3.      Reimbursable and accruing charges including bank fees and out of pocket charges for legal fees and costs incurred by the Bank on and after the Petition Date to the fullest extent allowed as an Allowable 506(b) Amount.

      D.      Subject only to the Carve Out (as defined and described in Paragraph I and Paragraph 2 of this Order), any and all cash, checks, negotiable instruments, securities, documents of title, deposit accounts, proceeds, products or profits of property, receivables and

4

other cash equivalents obtained by Debtor from all of its operations or which are proceeds of any

interest in the Bank Collateral constitute "cash collateral" of the Bank under § 363(a) of the

Bankruptcy Code (the "*Cash Collateral*"), except that Cash Collateral shall not include debtor-

in-possession financing obtained by the Debtor from Lila Isaacs and any post-petition capital

contribution made by Lila Isaacs to the Debtor (each a "*Shareholder Cash Infusion*").The Bank

Collateral extends to, and the Prepetition Indebtedness is secured by, the Cash Collateral

pursuant to § 552(b) of the Bankruptcy Code.

E.      The Debtor agrees to make the following payments to the Bank during the

pendency of the captioned case (the "*Case*"): (i) monthly interest on the Bank's Prepetition

Claim at the regular, non-default interest rate specified in the Loan Documents with an initial

stipulated payment of $8,800.00paid commencing with the month of December 2010 and with

the same amount payable on the last business day of each month thereafter ("*Interest

Payments*"); and (ii) all customary charges and fees imposed upon the Debtor in connection with

maintaining and administering any of the Debtor's accounts at the Bank, including any stop

payment charges or NSF fees (collectively, the "*Bank Payments*").

F.      Debtor represents that the Budget attached hereto as Exhibit "A," or as such

Budget may be modified in writing with the prior written consent of the Bank, which consent

shall not be unreasonably withheld (the "*Budget*"), contains a good faith estimate of all expenses

that are reasonable and necessary for the operation of its business and the preservation of the

Collateral through the period for which the Budget runs, and therefore includes all estimated

amounts potentially chargeable to Bank under § 506(c) of the Bankruptcy Code.  Debtor

acknowledges and agrees that, it shall not use any of the Cash Collateral for any purpose other

than the specific expenses identified in the Budget or as such Budget may be modified in writing

with the prior written consent of the Bank and in accordance with the terms of this Order, except

as the Bank may otherwise agree in writing.

G.      Debtor acknowledges and agrees that, it shall not use any of the Cash Collateral to

pay any compensation or bonuses to any officers or directors of Debtor (an "*Officer Payment*")

unless (i) such Officer Payment amounts have been specified and identified in the Budget and

(ii) there is cash available to permit such payment to be made after Debtor has made all other

monthly expenses set forth in the Budget including all Bank Payments.  Starting on April 30,

2011, and continuing thereafter during the Case, Debtor also agrees to make a payment equal to

twenty-five percent (25%) of any Excess Collections, but in no event more than $5,000 each

month, to the Bank (the "*Bank Reimbursement Payments*") to be applied as follows: (i) the first

$25,000 in Bank Reimbursement Payments shall be applied to reduce the principal balance of the

Prepetition Indebtedness; and (ii) any Bank Reimbursements Payments in excess of $25,000

shall be provisionally applied to reimburse the Bank for any accrued and unpaid legal expenses

incurred by the Bank in connection with the Case, subject to § 506(b) of the Bankruptcy Code.

As used herein, the term "*Excess Collections*" shall mean the proceeds of all account receivable

and any other proceeds of Bank Collateral or other assets of the Debtor collected by or on behalf

of Debtor determined as of the last date of the month for the prior monthly period less the sum of

(i) all expenses identified and described in the Budget that have been incurred and paid during

the prior monthly period including any proposed payments  that have yet to have been paid by

Debtor for that prior monthly period, (ii) all expenses identified and described in the Budget that

have been projected to be paid during the next monthly  period, and (iii) all other payments

authorized by Court Order after the date of this Order required to be made by Debtor prior to

calculation date or payments that have been agreed to by the Bank and the Debtor after the date of this Order.

H.  As protection of the interest of the Bank in Cash Collateral and Bank Collateral (the Cash Collateral and the Bank Collateral are hereinafter collectively referred to as the "*Collateral*"), but not necessarily full adequate protection within the meaning of §§ 361 and 363 of the Bankruptcy Code, and for Debtor's use of Cash Collateral and the potential diminution in value thereof, Debtor has agreed to provide the Bank with the Replacement Liens on the Replacement Collateral as described in Paragraph 2 of this Order.  For purposes of this Order, "Avoidance Claims" shall mean all claims and causes of action of Debtor or Debtor's estate for money or property recovered pursuant to §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 or 724(a) of the Bankruptcy Code, including Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) before deduction of any costs of collecting said money or property including reasonable attorney fees and costs.  For purposes of this Order, "*Preference Recoveries*" shall mean any and all recoveries of money or property for the Estate pursuant to §§ 547 or 550 of the Bankruptcy Code.  For purposes of this Order, "*Avoidance Recoveries*" shall mean any and all recoveries of money or property for the Estate pursuant to any Avoidance Actions but excluding any Preference Recoveries.

I.  The Bank consents to a carve out of Cash Collateral for payment of post-petition retainers and fees incurred to only the professionals retained by Debtor pursuant to an order of the Bankruptcy Court (the "*Carve Out Professionals*") in an amount not to exceed $100,000.00 (the "*Carve Out*") as further described and qualified in Paragraphs I and J and in Paragraph 2 of this Order.  The Carve Out with respect to such Carve Out Professionals: (1) shall equal an

7

aggregate amount not to exceed the lesser of (i) $100,000 or (ii) the aggregate amount of allowed

fees and expenses that accrue during the period commencing on the Petition Date and ending on

the earlier of the Effective Date of any Plan of Reorganization or the date that this Case is

dismissed or converted to a proceeding under Chapter 7 of the Code or September 30, 2011; and

(2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carve Out

Professionals., except that the Carve Out shall not be reduced by the payment of any fees and

expenses through prepetition retainers obtained by such Carve Out Professionals. Any allowed

professional fees to Carve Out Professionals shall be paid first out of any prepetition retainer or

property of the estate (other than property subject to an unavoidable lien in favor of the Bank)

before such payments are made from proceeds of the Cash Collateral, Bank Collateral or

Replacement Collateral.  The Bank has consented to the creation of the Carve Out solely for the

benefit of the Carve Out Professionals and no other persons.  The Bank has consented to the

creation of the Carve Out with the express understanding that no portion of the Carve Out shall

be used by Carve Out Professionals to pay for fees incurred in challenging the creation, validity,

or priority of the Bank Collateral or Replacement Liens granted under this Order, or asserting

any claim against the Bank with respect to the Prepetition Indebtedness, except, however, that

the Carve Out may be used to pay fees and expenses incurred by the Carve Out Professionals in

connection with the negotiation, preparation and entry of this Order or any amendment hereto

and investigating the claims of the Bank prior to and within thirty (30) days from the date of this

Order.

       J.      As further consideration to the Bank with respect to its consent to the use of Cash

Collateral and to the Carve Out, to the extent the Debtor realizes cash proceeds from sources

other than the Bank Collateral during the Case, including from (i) any assets of Debtor that are

not subject to the Bank's lien (ii) Preference Recoveries and (iii) Avoidance Recoveries which are not included within the scope of the Bank Collateral, but excluding any Shareholder Cash Infusions (the "*Non-Bank Collateral*"), Debtor agrees that it shall use such proceeds of Non-Bank Collateral exclusively to first (a) fund the payment of any professional fees covered by the Carve-Out or reimburse the Bank for any prior use of the Carve-Out to pay such professional fees and (b) pay Debtor expenses included in the Budget before resorting to use of Cash Collateral and further shall reflect that use in any ongoing reports related to any monthly reports. To the extent there is any excess cash proceeds from Non-Bank Collateral following the payment of such expenses, Debtor agrees to reimburse Bank for any prior use of Cash Collateral to fund any payment under the Budget for Officer Payments prior to payment in full of the Prepetition Indebtedness and any Collateral Value Decrease Amount (defined below) during any period prior to the date Debtor realizes net cash proceeds from Non-Bank Collateral, provided however that such reimbursement shall be limited to no more than sixty six percent (66%) of any such realized net cash proceeds from any Non-Bank Collateral.

K.      The Bank consents to the terms of this Order and is entitled to the adequate protection as set forth herein pursuant to §§ 361, 362, 363 and 364 of the Bankruptcy Code for any decrease in the value of its interests in the Collateral from and after the Petition Date ("*Collateral Decrease Amount*").  Debtor represents that under the circumstances of this Case, this Order is a fair and reasonable response to Debtor's request for Bank's consent to the use of Cash Collateral and the entry of this Order is in the best interest of Debtor's Estate and its creditors.

**THE COURT HEREBY FINDS**:

A.     Petition Date.  On December 6, 2010 (the "*Petition Date*"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

B.     Debtor in Possession.  Debtor has continued in the management and possession of its business and property as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No Official Committee of Unsecured Creditors has been appointed in this Case.

C.     Jurisdiction and Venue.  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     The Bank's Prepetition Claim.  The Bank asserts and Debtor acknowledges that, as of the Petition Date, the Bank holds an allowed secured claim against Debtor in the amount of $1,333,073.66 exclusive of accrued and accruing Allowable 506(b) Amounts and that all cash now or hereinafter in the possession of the Debtor other than any Shareholder Cash Infusions constitutes "cash collateral" of the Bank under § 363 of the Bankruptcy Code.

**Based upon the foregoing stipulations of the Debtor and the Bank, as well as the findings and conclusions, the Cash Collateral Motion, and the record before the Court with respect to the Cash Collateral Motion; Debtor and the Bank having agreed to Debtor's use of the Bank's Cash Collateral on a final basis pursuant to the terms of this Order; the Final Hearing having been held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(b)(2); due and proper notice of the Motion and the Final Hearing having been given to all parties entitled thereto; no objection to the Motion having been filed or served by any creditor or party in interest; and good and sufficient cause appearing therefore,**

**IT IS HEREBY ORDERED that:**

1.      <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Order, the Debtor may use Cash Collateral to pay actual, ordinary, and necessary expenses set forth in the Budget attached hereto as Exhibit "A," or as such Budget may be modified in writing with the prior written consent of the Bank, which consent shall not be unreasonably withheld (the "*Budget*"), including the Bank Payments and any permitted Bank Reimbursement Payments. Interest Payments received by Bank shall be provisionally applied by the Bank as interest payments paid to the Bank and any Bank Reimbursement Payments used to reimburse the Bank for any legal expenses shall be provisionally applied for such purpose but in each case subject to such payments being reclassified and reallocated to principal payments in the event that it is later determined that the Bank is not entitled to receive interest on its Prepetition Indebtedness or reimbursement of legal fees as Allowable 506(b) Amounts. Absent further order of Court or the consent of the Bank, the Debtor shall not be authorized to use cash collateral to pay any items in excess of 115% of the total monthly budgeted cash disbursements and expense amount set forth in the Budget, in the aggregate, measured on a monthly basis. The Budget, and the Debtor's

corresponding authority to use Cash Collateral, may be modified and extended with the prior

notice to and prior consent and agreement of the Bank.

      2.    <u>Replacement Liens and Carve-Out</u>.  As protection of the interest of the Bank in

Cash Collateral, but not necessarily adequate protection within the meaning of §§ 361 and 363 of

the Bankruptcy Code, for Debtor's use of Cash Collateral and the potential diminution in value

thereof, the Bank to the same and fullest extent and in the same priority that the Bank had valid

prepetition security interest in the Bank Collateral, the Court grants to the Bank, as additional

security for the Prepetition Indebtedness, replacement security interests in and lien upon all of

Debtor's property and assets, of any kind or nature whatsoever, whether now owned or hereafter

acquired by the Debtor including but not limited to, all assets of Debtor of a like kind included

within the definition of Bank Collateral, including all proceeds, products, rents and/or profits

thereof and including Avoidance Recoveries which are included within the scope of Bank

Collateral but expressly excluding any Preference Recoveries or any Shareholder Cash Infusions

(such collateral, collectively, the "*Replacement Collateral*," and such replacement security

interest and lien, the "*Replacement Lien*").  The Replacement Liens shall be enforceable in an

amount equal to the aggregate post-petition diminution in the value of the interest of the Bank in

the Bank Collateral, as such Bank Collateral existed as of the Petition Date (whether as a result

of physical deterioration, consumption, use, shrinkage, decline in market value or otherwise),

including, without limitation, the post-petition diminution in value of the Bank Collateral

resulting from Debtor's use of Cash Collateral as provided herein.  Without limiting the

generality of the foregoing, the Bank lien on Replacement Collateral (a) shall be subject only to

non-avoidable, valid, enforceable and perfected liens and security interests in the prepetition

Bank Collateral and Replacement Collateral of Debtor, that existed on the Petition Date, (b) shall

at all times be senior to the rights of Debtor, and (c) shall be senior to any security interest in or

lien on the Replacement Collateral which is avoided or otherwise preserved for the benefit of

Debtor's estate under § 551 of the Bankruptcy Code or any other provision of the Bankruptcy

Code; provided however, the Bank consents to the Carve Out in an amount not to exceed

$100,000 for payment of post-petition retainers, fees and expenses allowed and payable to the

Carve Out Professionals.  The amount of the Carve Out shall be reduced by the amount of any

loans or extensions of credit obtained by the Debtor that are not fully subordinated to the claims

of the Bank in a manner acceptable to the Bank.  The unused amount of the Carve Out shall be

further reduced by the amount of any proceeds received by the Debtor from any Non-Bank

Collateral (other than Non-Collateral Cash) that has not been required to be applied by Debtor

for other permitted purposes as provided in this Order or any other order of the Court. In

consideration for the Carve Out, effective as of the Petition Date, no claim of Carve Out

Professionals may be asserted against the Collateral or Bank under § 506(c) of the Bankruptcy

Code, the enhancement of collateral provisions of § 552 of the Bankruptcy Code, or any other

legal or equitable doctrine (including, without limitation, unjust enrichment) to the extent of the

Carve Out.  The terms and provisions of this paragraph are intended by the Debtor to survive the

termination of this Order and shall remain binding on the Debtor, Bank, on any trustee or other

fiduciary subsequently appointed with respect to property of the or other fiduciary subsequently

appointed with respect to property of the Debtor's estate.

   3. <u>Validity and Perfection of Replacement Liens</u>. The Replacement Liens on the

Replacement Collateral granted to the Bank shall be, and hereby are, deemed valid, enforceable

and duly and automatically granted and perfected and recorded under all applicable federal or

state or local or other laws, statute, rule or regulation, and no notice, filing, mortgage

13

recordation, possession, further order or other act shall be required to effect such grant or

perfection of such Replacement Liens; provided, however, that notwithstanding the provisions of

§ 362 of the Bankruptcy Code, the Bank may, at its sole option, file or record or cause Debtor to

execute, file or record such UCC financing statements, notices of liens and security interest,

mortgages, or other similar documents as the Bank may require.

4.      Adequate Protection Superpriority Claims.  The Bank shall have all of the rights

accorded to it pursuant to § 507(b) of the Bankruptcy Code in respect of the adequate protection

provided herein.  Pursuant to §§ 503(b) and 507(b) of the Bankruptcy Code and to the extent of

the value of the prepetition Bank Collateral is less than the Prepetition Indebtedness as a result of

the Debtor's use of Cash Collateral, the Court grants to the Bank an allowed superpriority

administrative expense claim (the "*Adequate Protection Superpriority Claim*").  The Adequate

Protection Superpriority Claim shall have priority over all other administrative expenses

allowable under the Code pursuant to § 507(b) of the Bankruptcy Code, except for and to the

extent of the Carve Out, but shall be junior to all prior perfected and unavoidable secured claims

in property of the Debtor's estate as of the Petition Date and to the quarterly fees payable to the

United States Trustee pursuant to 28 U.S.C. § 1930; or the fees and expenses of the Clerk of this

Court.

5.      The Debtor's Obligations.  The Debtor shall maintain insurance of the kind

covering the Collateral, including, without limitation, life, fire, hazard, comprehensive, public

liability, and workmen's compensation as may be currently in effect, and obtain such additional

insurance in an amount as is appropriate for the businesses in which the Debtor is engaged.  The

Debtor shall comply with the stipulations and agreements with the Bank as described in this

Order.  So long as this Order is in effect, the Debtor shall not attempt to grant any entity, other

14

than the Bank, a lien or security interest in any assets of the Debtor, including Cash Collateral

and all other assets subject to the Replacement Liens and Adequate Protection Liens, pursuant to

§364 of the Bankruptcy Code or otherwise, having priority over or parity with the Bank' secured

interests in such assets without the prior express written consent of the Bank.

6.     Debtor Financial Reports.  The Debtor shall promptly provide the Bank with

copies of all financial reports made to the Court or to the United States Trustee, including,

without limitation, the monthly operating report for the prior month that the Debtor is required to

file with the United States Trustee's office, along with all reports of revenues and expenses, and

all other reports of financial data given by the Debtor to any other party, or reasonably requested

by the Bank.  Without limiting the foregoing, Debtor shall provide the Bank, to the extent

available, with bi-weekly reports which include but are not limited to:  (a) all sales generated by

the Debtor; (b) all accounts receivable generated by the Debtor and collected; (c) all monies

received by the Debtor; (d) an itemization of all of the Debtor's income and expenditures with

the same level of line item detail as set forth in the Budget and with an explanation of any

adverse variation to the Budget and (e) all other reports previously required and furnished by the

Debtor to the Bank under the Loan Documents.  Without limiting the foregoing, the Debtor shall

provide the Bank with copies of any inventories or appraisals conducted or obtained covering

any and all goods including inventory and equipment located on the premises of Debtor.

7.     Challenge Rights.  Notwithstanding anything herein to the contrary, the

Unsecured Creditors' Committee (the "*Committee*"), if appointed, shall have until the later of (i)

60 days from the date of appointment of the Committee and (ii) 75 days from the entry of this

Order, and (c) any other non-debtor party in interest (including, without limitation, any

receiver, administrator or trustee appointed or elected in the Case or any successor case

or in any jurisdiction) shall have until 75 days from the entry of this Order to investigate the

validity, perfection, and enforceability of the prepetition Liens or to assert any other

claims or causes of action against the Bank, except that any chapter 7 trustee subsequently

appointed in the case shall have 75 days from his or her appointment to investigate the

validity, perfection, and enforceability of the prepetition Liens or to assert any other

claims or causes of action against the Bank(the "*Investigation Termination Dates*").  If the

Committee, a chapter trustee, or any non-debtor party in interest determines that there may be

a challenge by the applicable Investigation Termination Date, such party shall have only until

the Investigation Termination Date to commence an adversary proceeding or contested matter

(each, a "*Challenge*"), as required by the applicable Bankruptcy Rules, on behalf of the Debtor's

estate setting forth the basis of any such Challenge. In no event shall the filing of any such

Challenge affect any of the rights, privileges, powers or remedies of the Bank under this Order or

the Loan Documents pending a ruling on such Challenge. If no Challenge is filed on or before the

Investigation Termination Dates (or such other later date as extended by the written consent of

the Debtor and the Bank)**,** then without further order of the Court, (i) the claims, liens and

security interests of the Bank shall be deemed to be allowed for all purposes in these Case and

shall not be subject to challenge by any party in interest as to extent, validity, priority or

otherwise; (ii) the Debtor and its estate shall be deemed to have waived, released and discharged

Bank and its officers, directors, principals, attorneys, consultants, predecessors in interest, and

successors and assigns of and from any and all claims and causes of action, indebtedness, and

obligations, of every type, which occurred on or prior to the date of entry of this Order with

respect to or in connection with the Prepetition Indebtedness, the Bank Collateral, the Loan

Documents or otherwise and (iii) the other agreements, acknowledgements, releases and

16

stipulations contained in this Order shall be irrevocably binding on the Debtor's estate, the

Committee, if appointed, and all other parties in interest (including, without limitation, any receiver,

administrator, or trustee appointed in the Case or any successor case or in any jurisdiction) without

further action by any party or this Court.

      8.     <u>Automatic Stay</u>.  The automatic stay of § 362 of the Bankruptcy Code shall be

modified to the extent necessary to implement the provisions of this Order.

      9.     <u>Miscellaneous Provisions</u>.  The Bank shall be conclusively presumed to have

requested adequate protection as of the Petition Date.  Nothing contained in this Order shall

preclude the Bank from seeking additional or different adequate protection (as defined in § 361

of the Bankruptcy Code), and this Order is without prejudice to the right of the Bank from

seeking to terminate or modify the automatic stay or the right of Debtor and other parties in

interest to oppose such relief requested.

      10.    Bank shall not be deemed to have suspended or waived any of their rights or

remedies under this Order, the Loan Documents, the Prepetition Indebtedness, the Bankruptcy

Code, or applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by

a duly authorized officer of Bank, as applicable, and directed to Debtor.  No failure of Bank to

require strict performance by Debtor (or by any Trustee) of any provision of this Order shall

waive, affect or diminish any right of Bank thereafter to demand strict compliance and

performance therewith, and no delay on the part of Bank in the exercise of any right or remedy

under this Order, the Loan Documents, the Prepetition Indebtedness, the Bankruptcy Code, or

applicable nonbankruptcy law shall preclude the exercise of any right or remedy.  Further, this

Order shall not constitute a waiver by Bank of any of its rights under the Loan Documents, the

Bankruptcy Code or applicable nonbankruptcy law, including, without limitation their right to

later assert: (i) that its interests in the Collateral lack adequate protection within the meaning of §§ 362(d) or 363(e) of the Bankruptcy Code or any other provision thereof; or (ii) a claim under § 507(b) of the Bankruptcy Code, except that, absent a material change of circumstances, the Bank shall be prohibited from asserting that its interests in the Collateral is not adequately protected if the Debtor is in compliance with this Order and any Budget approved by the Bank. Further, this Order shall not constitute a waiver by Bank of any of its rights under the Loan Documents, the Bankruptcy Code or applicable nonbankruptcy law with respect to any rights the Bank may have against any non-Debtor obligors under the Loan Documents including the Individual Guarantor, Trust Guarantor or Pledgors or with respect to any other collateral granted to the Debtor by any non-Debtor Obligors including the Individual Guarantor, Trust Guarantor or Pledgors.

11.     <u>Effect of Later Modification</u>.  If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any rights or claims of the Bank arising hereunder prior to the effective time of such stay, modification or vacatur, or the validity and enforceability of any lien or priority authorized hereby.  Notwithstanding any such stay, modification or vacatur, any rights or claims of the Bank arising hereunder prior to the effective time of such modification, stay or vacatur and any lien or priority authorized hereby shall be governed in all respects by the original provisions of this Order, and the Bank shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, and all rights accorded by § 507(b) of the Bankruptcy Code.

12.     <u>Additional Cash Collateral</u>. The entry of this Order is without prejudice to the Debtor's right to seek authority to use additional Cash Collateral if the Debtor determines that the Cash Collateral use authorized by this Order is insufficient.

13.     <u>Immediate Effectiveness of Authority</u>. The Debtor's authority to use Cash Collateral under this Order shall be effective immediately and shall extend through the term of the Budget (as such Budget may be subsequently extended by agreement between the Debtor and the Bank).  To the extent any provision of this Order conflicts with any provision of the Cash Collateral Motion, the provisions of this Order shall control.

14.     <u>Survival.</u>  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with any order which may be entered in the Case: (a) confirming any chapter 11 plan accepted by the Bank unless such plan specifically modifies or vacates this Order, (b) converting the Case to a case under chapter 7 of the Code, (c) dismissing the Case, (d) withdrawing of the reference from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of the Case in this Court.  The terms and provisions of this Order, including, without limitation, the rights granted Bank under §§ 364(c) and (d) of the Bankruptcy Code, shall continue in full force and effect until all of the Prepetition Indebtedness plus any accrued and accruing Allowable 506(b) Amounts are indefeasibly paid in full in cash and discharged.

ENTER:

_____
United States Bankruptcy Judge

**AGREED TO:**

**HICO FLEX BRASS COMPANY, INC.**          **BANK OF AMERICA, N.A.**


By:   /s/ Sara E. Lorber                              By:   /s/ James G. Froberg
         One of its attorneys                                  One of its attorneys
William J. Factor                                     James G. Froberg
Sara E. Lorber                                        Lowis & Gellen LLP
The Law Office of William J. Factor, Ltd.             200 West Adams St., Suite 1900
105 W. Madison, Suite 400                             Chicago, IL 60606
Chicago, IL 60602

**EXHIBIT 4**

**Budget to Agreed Final Cash Collateral Order**

|  | March 2011 | April 2011 | May 2011 | June 2011 |
|---|---|---|---|---|
| **CASH** | | | | |
| Beginning Cash Balance | $7,000.00 | $8,217.00 | $1,904.00 | $5,880.10 |
| Net Sales | $50,000.00 | $50,500.00 | $51,000.00 | $51,500.00 |
| Other Receipts | | | | |
| DIP Loan* | | $20,000.00 | | |
| **Total Cash:** | **$57,000.00** | **$78,717.00** | **$52,904.00** | **$57,380.10** |
| | | | | |
| **DISBURSEMENTS** | | | | |
| Rent | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 |
| Materials | $9,000.00 | $9,090.00 | $9,180.90 | $9,272.71 |
| Commissions | $2,500.00 | $2,500.00 | $2,500.00 | $2,500.00 |
| Freight out | $2,500.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| Labor (warehouse) | $2,000.00 | $2,000.00 | $2,100.00 | $2,100.00 |
| Payroll taxes (warehouse) | $200.00 | $440.00 | $460.00 | $460.00 |
| Insurance | $1,833.00 | $1,833.00 | $1,833.00 | $1,833.00 |
| Interest expense | $8,800.00 | $8,800.00 | $8,800.00 | $8,800.00 |
| Office expenses | $150.00 | $200.00 | $200.00 | $200.00 |
| Office payroll & payroll taxes | $4,500.00 | $4,500.00 | $4,500.00 | $4,500.00 |
| Officer (N. Isaacs) payroll & payroll taxes | $5,000.00 | $7,100.00 | $7,100.00 | $7,100.00 |
| Postage & delivery | $50.00 | $100.00 | $100.00 | $100.00 |
| Repairs & maintenance | $100.00 | $100.00 | $100.00 | $100.00 |
| Telephone  network | $500.00 | $500.00 | $500.00 | $500.00 |
| Utilities and waste management | $650.00 | $650.00 | $650.00 | $650.00 |
| Repayment of incorrect transfer to Lila Isaacs | | | | |
| Moving Expense | $5,000.00 | | | |
| Professional Fees | | $30,000.00 | | |
| | | | | |
| **TOTALS:** | | | | |
| **Cash:** | **$57,000.00** | **$78,717.00** | **$52,904.00** | **$57,380.10** |
| **Expenditures:** | **$48,783.00** | **$76,813.00** | **$47,023.90** | **$47,115.71** |
| | | | | |
| **Cash Balance:** | **$8,217.00** | **$1,904.00** | **$5,880.10** | **$10,264.39** |

* DIP Loan proceeds are not part of the Bank's cash collateral.  Drawn downs on the DIP Loan will be made on as needed basis to meet expenditures