# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| HICO FLEX BRASS COMPANY, INC., | ) | Case No. 10-54005 |
| | ) | |
| Debtor. | ) | Hon. A. Benjamin Goldgar |

## NOTICE OF MOTION

PLEASE TAKE NOTICE, that on April 10, 2013, at 9:30 A.M., or as soon thereafter as counsel may be heard, the undersigned intends to appear before the Honorable A. Benjamin Goldgar, United States Bankruptcy Judge for the Northern District of Illinois, Eastern Division, in Courtroom 642 of the Everett McKinley Dirksen Federal Building, which is located at 219 S. Dearborn Street, Chicago, Illinois, 60604, and at that time and place shall present the undersigned attorneys' **Motion of William J. Factor and the Law Office Of William J. Factor, Ltd. to Affirm Disinterestedness and the Final Compensation Award**, a copy of which is served herewith upon you.

Dated: April 1, 2013

Respectfully submitted,

THE LAW OFFICE OF WILLIAM J. FACTOR, LTD.

By: /s/ Sara E. Lorber

William J. Factor (6205675)
Sara E. Lorber (6229740)
**THE LAW OFFICE OF
WILLIAM J. FACTOR, LTD.**
105 W. Madison St., Suite 1500
Chicago, IL 60602
Tel:   (847) 239-7248
Fax:   (847) 574-8233
Email: wfactor@wfactorlaw.com
        slorber@wfactorlaw.com

**CERTIFICATE OF SERVICE**

I, Sara E. Lorber, an attorney, hereby certify that on April 1, 2013, pursuant to Section II.B.4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed.R.Civ.P. 5(a), I caused a copy of the foregoing Notice of Motion and accompanying Motion to be served electronically through the Court's Electronic Notice for Registrants on the following Registrants in the case:

- Jeffrey E Altshul jaltshul@ginsbergjacobs.com
- Leonard S. Becker lenbecker@sbcglobal.net
- William R. Brodzinski wbrodzinski@mrvlaw.com
- Daniel P. Dawson ddawson@nisen.com, adrag@nisen.com
- William J Factor wfactor@wfactorlaw.com, wfactorlaw@gmail.com;nb@wfactorlaw.com
- Richard M Fogel rfogel@shawgussis.com, il72@ecfcbis.com
- Richard M. Fogel rfogel@shawfishman.com, il72@ecfcbis.com
- James G Froberg jgfroberg@lowis-gellen.com, jgfroberg@aol.com
- Mitchell Elliot Jones mej@joneslaw.org
- Patrick S Layng USTPRegion11.ES.ECF@usdoj.gov
- Theodore Liebovich liebovich-weber@comcast.net
- Gabriel Reilly-Bates gbates@shefskylaw.com, sfdocket@shefskylaw.com
- Peter J Roberts proberts@shawfishman.com
- Tiffany Rodriguez trodriguez@bslbv.com
- Ben L Schneider ben@windycitylawgroup.com, mstone@windycitylawgroup.com
- Marc D Sherman marc@mshermanlawoffice.com, info@mshermanlawoffice.com
- Marc D Sherman marc@mshermanlawoffice.com, info@mshermanlawoffice.com
- Jeffrey Snell jeffrey.snell@usdoj.gov
- Pia N Thompson pthompson@gouldratner.com, bburns@gouldratner.com

                                        /s/ Sara E. Lorber

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| HICO FLEX BRASS COMPANY, INC., | ) | Case No. 10-54005 |
| | ) | |
| Debtor. | ) | Hon. A. Benjamin Goldgar |

**MOTION OF WILLIAM J. FACTOR AND
THE LAW OFFICE OF WILLIAM J. FACTOR, LTD. TO
AFFIRM DISINTERESTEDNESS AND THE FINAL COMPENSATION AWARD**

William J. Factor and The Law Office of William J. Factor, Ltd. (collectively, the "*Firm*"), seeks entry of an order affirming its disinterestedness and retention as general bankruptcy counsel to Hico Flex Brass Company, Inc. ("*Hico*"), the debtor-in-possession during the period of December 6, 2010, through July 31, 2012, and the Final Compensation Award (as defined herein). In support of this motion, the Firm respectfully states as follows:

**INTRODUCTION**

1. In October 2012, the Firm filed suit against Lila Isaacs in the Circuit Court of Cook County, Illinois to recover on a guaranty (the "*Guaranty*") that Ms. Isaacs provided to the Firm in December 2010, in connection with the Firm's representation of Hico in the captioned case (the "*Case*"). Ms. Isaacs defended the litigation, in part, by pointing out that the Firm did not disclose the Guaranty when it sought to be retained as Hico's general bankruptcy counsel, and thus the Guaranty was not enforceable against her.

2. Upon learning of Ms. Isaacs' defense, the Firm promptly reviewed the documents that it submitted in connection with its retention application in this Case and, to its surprise and dismay, confirmed that it had mistakenly failed to disclose the Guaranty.

3. The Firm immediately brought this issue to the attention of the chapter 7 trustee who was appointed after the Case was converted to a chapter 7 proceeding on July 30, 2012, as well as to the attention of the Office of the U.S. Trustee. The Firm then promptly filed a supplemental declaration in support of its retention disclosing the Guaranty (the "*Supplemental Declaration*"), a copy of which is attached as **Exhibit A**.

4. Since the filing of the Supplemental Declaration, no party has challenged the validity of the Firm's retention or the final allowance of its fees and expenses. The United States Trustee, however, asked the Firm to more specifically bring this Guaranty disclosure issue to the Court's attention so that the Court and any party in interest may revisit the Firm's original retention and Final Compensation Award in light of the Guaranty.

5. As discussed below, the Firm's failure to disclose the Guaranty was the result of an oversight when the Firm was preparing its retention papers. Although the Firm did disclose that it had received a retainer from Ms. Isaacs (through her revocable trust), it did not disclose that Ms. Isaacs also executed the Guaranty. The Firm believes this failure resulted from forgetfulness due to the almost six weeks that elapsed between the time the Firm obtained the Guaranty and the time it filed its application to be retained, as well as the high level of activity in the Case during this period. At no time did the Firm intend to mislead either the Court or any party in interest. Once the mistake was discovered, the Firm took prompt action to correct the situation.

6. The Firm understands the Guaranty should have been disclosed in the original declaration signed by Mr. Factor in support of the retention application, but submits that the failure to disclose the Guaranty should not result in retroactive disqualification of the Firm or in a reduction to the Firm's finally allowed fees and expenses. The Firm does not believe the

2

existence of the Guaranty created a conflict or in any way impacted the Firm's representation and undivided loyalty to the Debtor and its estate.

## BACKGROUND FACTS

7.    Hico was a family-owned and operated business that for almost 50 years had been in the business of importing and wholesaling plumbing specialty goods. It was started by Harold Isaacs in the 1960s and when he passed away in 2006, his wife, Lila Isaacs, became the sole shareholder of Hico. Ms. Isaacs, however, was not actively involved in operating the business. Her two sons, Neil and Mark, were responsible for operating the business at the time Hico filed for bankruptcy relief, although Mark was terminated on December 6, 2010 (the "*Commencement Date*"), the date the chapter 11 case commenced, and Neil continued to operate the business thereafter.

8.    On the Commencement Date, Ms. Isaacs executed the Guaranty, a copy of which is attached to the Supplemental Declaration as Exhibit A. The Guaranty provides, in part, that:

> The Firm will first seek payment of such fees and expenses from Client [Hico] and/or its bankruptcy estate and in the event such payment is not made within 90 days of a request for payment or allowance under Section 330 or 331 of the Bankruptcy Code, as applicable, Guarantor shall be liable for such fees and expenses and shall promptly pay such fees and expenses upon request.

9.    Immediately upon commencement of the Case, the Firm provided services to Hico in order to help it stabilize its business operations and to deal with some of the issues that were presented as a result of a change in Hico's management. Some of the initial activity also involved identifying and securing Hico's bank accounts, negotiating and documenting an agreement with Bank of America regarding the use of cash collateral, preparing Hico's bankruptcy schedules, investigating the treatment of Hico's retirement plan and communicating extensively with the Employee Benefits Security Administration regarding the retirement plan,

3

seeking and obtaining authorization to move Hico's operations from Chicago to Rockford, and obtaining debtor in possession financing from Ms. Isaacs to help facilitate the move.

10. All of these tasks were complicated by the fact that the person who had been the primary manager of Hico prior to the Commencement Date, Mark Isaacs, had been terminated and was not cooperating with his family with regard to Hico.

11. On January 17, 2011, almost six weeks after the Commencement Date, the Firm filed an application to be retained as general bankruptcy counsel effective as of the Commencement Date (the "*Retention Application*"). A copy of the Retention Application is attached as **Exhibit B**.

12. The Retention Application disclosed that prior to the Commencement Date, the Firm received two retainer payments, totaling $20,000 (collectively, the "*Retainer*") from the Lila Isaacs Revocable Trust, including a $5,000 payment on November 15, 2010 and a $15,000 payment on December 3, 2010.

13. Ms. Isaacs, as noted above, was Hico's sole shareholder. She also had guaranteed Hico's obligation to Bank of America, and provided post-petition financing to enable Hico to move from Chicago to Rockford and restart its operations. *See* Dkt. Nos. 68 and 94. During the course of the Firm's representation of Hico, according to Hico's monthly operating reports, Ms. Isaacs contributed $226,344.39 to Hico, of which $100,000 was pursuant to the approved DIP financing order and the remainder of which was voluntary contributions. *See* Dkt. Nos. 94, 117, 125,130, 137,139, 142, 173,180,191, 221, 228, 229 and 245.

14. The Retainer provided to the Firm was disclosed in the Retention Application, as was the fact that a portion of the Retainer was applied to prepetition fees incurred by the Firm on behalf of Hico so that the Firm was not a creditor in the Case.

15. In addition to the Retention Application, the Firm filed the Declaration of William J. Factor (the "*Factor Declaration*"), which is included as part of Exhibit A. In the Factor Declaration, Mr. Factor disclosed the Firm's connections with parties in interest, but it did not disclose the Guaranty. The Factor Declaration also incorrectly stated that:

> Pursuant to Bankruptcy Rule 2016(b), neither LOWJF nor its professionals have entered into any agreements, express or implied, with any other party in interest, including the Debtor, any creditor in the Case or any attorney for a party in interest in the Case: (a) for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered; (b) for payment of compensation from the assets of the estate in excess of the compensation allowed by this Court pursuant to applicable sections of the Bankruptcy Code; or (c) for payment of compensation in connection with the Case other than in accordance with the applicable sections of the Bankruptcy Code and as disclosed herein.

16. On January 24, 2011, the Court entered an Order granting the Firm's retention application. *See* Dkt. No. 88.

17. On March 16, 2011, the Court entered an Agreed Cash Collateral Order that authorized Hico to use cash collateral in which Bank of America had an interest, and further granted certain protections to Bank of America, including replacement liens and priority claims. The Agreed Cash Collateral order also authorized a $100,000 carve-out for the fees and expenses incurred by Hico's professionals. *See* Dkt No. 110.[1]

---

[1] Paragraph 2 of the Cash Collateral Order (p. 13) provides, in pertinent part, that:

> [T]he Bank consents to the Carve Out in an amount not to exceed $100,000 for payment of post-petition retainers, fees and expenses allowed and payable to the Carve Out Professionals. The amount of the Carve Out shall be reduced by the amount of any loans or extensions of credit obtained by the Debtor that are not fully subordinated to the claims of the Bank in a manner acceptable to the Bank.

18. From early 2011 through early 2012, the Firm represented Hico in connection with its efforts to reorganize, and to reach an acceptable agreement with Bank of America. The Firm also spent a substantial amount of time complying with a subpoena issued by the Employee Benefits Security Administration and working with the Administration on a voluntary basis to identify plan assets, distributions and amounts owed to plan participants. Ms. Isaacs was not involved with the 401k plan, which was in the process of being terminated by Mark Isaacs when the case was filed.

19. As a result of its work on behalf of the Debtor during 2011, on February 9, 2012, the Firm filed its First Interim Application for Compensation and Reimbursement of Expenses, seeking compensation of fees in the amount of $104,092.50 and reimbursement of expenses in the amount of $4,464.41 for the period of December 6, 2010 through December 1, 2011 (the "*First Application*") and authorizing (a) the Firm to apply the remaining portion of the Retainer to the allowed fees and compensation and (b) the Debtor to pay the allowed fees and expenses. *See* Dkt. No. 210.

20. The Court entered an Order approving the First Application on March 5, 2012. *See* Dkt. No. 213. The Firm was not paid any amount from the bankruptcy estate on account of the fees and expenses allowed pursuant to the First Application, although the Firm did apply the $11,150 of the remaining retainer to its fees and expenses.

21. On or about April 1, 2012, the Firm sent a letter to Ms. Isaacs requesting payment of the fees and expenses that had been previously awarded and advising her that if payment was not made by May 1, 2012, the Firm would seek to withdraw as counsel to Hico and also would seek to collect on the Guaranty. A copy of that letter is attached as **Exhibit C**.

6

22. On May 1, 2012, the Firm filed a motion to withdraw as bankruptcy counsel to Hico. *See* Dkt. No. 231. The motion to withdraw was granted on May 9, 2012. *See* Dkt. No. 235.

23. On May 14, 2012, the Firm filed its Second and Final Application for Compensation and Reimbursement of Expenses (the "*Second Application*"). The Second Application requested an order: (a) allowing and awarding the Firm on a final basis additional fees in the amount of $14,210 and reimbursement of actual and necessary expenses in the amount of $37.82; (b) allowing on a final basis the fees and expenses awarded to the Firm on an interim basis pursuant to the First Fee Application; and (c) authorizing and directing the Debtor to pay all unpaid allowed fees and expenses. *See* Dkt. No. 238.

24. On June 13, 2012, the Debtor objected in writing to the Second Application, arguing, among other things, that "[i]t is the debtor's position that the action and services rendered by Movant to date, have not benefited the debtor's bankruptcy estate; especially its creditors." A copy of the Objection is appended hereto as **Exhibit D**.

25. On June 18, 2012, the Court overruled the Debtor's Objection to the Firm's Second Application, and entered an order granting the Application, allowing the Firm on a final basis total fees and expenses in the amount of $118,302.50 and $4,523.21, respectively, for the period from December 6, 2010 through May 9, 2012 (the "*Final Compensation Award*"). *See* Dkt. No. 266.

26. The Firm has not received any funds from the bankruptcy estate on account of the Final Compensation Award.

7

27. On or about August 31, 2012, the Firm sent a demand letter to Ms. Isaacs regarding payment of the Final Compensation Award. In response, the Firm received a $1,500 check from the Lila Isaacs Revocable Trust in early September of 2012.[2]

28. On or about September 17, 2012, the Firm sent Ms. Isaacs a letter informing her that Firm was willing to enter into a payment plan with her for $2,500 per month, provided she executed a promissory note that provided for the payment of interest and that contained a confession of judgment clause. A copy of this letter is attached as **Exhibit E**.

29. When Ms. Isaacs refused to execute the promissory note, the Firm brought suit to collect on the Guaranty. The suit was filed on October 11, 2012, in the Circuit Court of Cook County (the "*Guaranty Litigation*"). On December 12, 2012, Ms. Isaacs filed her answer in the Guaranty Litigation. As noted above, one of her defenses was that the Guaranty was not enforceable because it had not been disclosed in the Retention Application or the Factor Declaration.

30. After reviewing Ms. Isaac's answer and checking the docket in the filings in the Case, the Firm realized it had failed to disclose the Guaranty in connection with the Retention Application.

31. After recognizing its error, the Firm promptly contacted the chapter 7 trustee and the United States Trustee to advise them of this issue. The Firm then filed a Supplemental Declaration of William J. Factor Pursuant to 11 U.S.C. § 329 and Fed. R. Bankr. P. 2014(A) and 2016(b) (the "*Supplemental Declaration*") on December 21, 2012 (Exhibit A). The Firm disclosed in the Supplemental Declaration that Ms. Isaacs had guaranteed the payment of the

---

[2] Prior to filing the Guaranty Litigation (as defined herein), the Firm received two more payments of $1,000 each from Lila Isaacs (through her trust). Thus, the Firm received payment of $3,500 on account of the Final Compensation Award before Ms. Isaacs was served with the complaint in the Guaranty Litigation.

Firm's fees and expenses, as well as its retention of a payment of $450 from Mark Isaacs that was paid as a discovery sanction.

32. Subsequent to filing the Supplemental Declaration, the United States Trustee asked the Firm to bring the Guaranty disclosure issue to the Court's attention by motion so that the Court could enter any appropriate orders. The Firm has thus filed the current motion in order to more fully apprise the Court of the present facts.

33. On February 15, 2013, the Firm and Ms. Isaacs entered into a settlement agreement pursuant to which the Firm agreed to dismiss the Guaranty Litigation against Ms. Isaacs with prejudice, in exchange for the payment of $20,000.

## DISCUSSION

34. Pursuant to § 327 of the Bankruptcy Code, upon court approval, a debtor in possession may employ one or more attorneys who do not hold or represent an interest that is adverse to the estate and are disinterested parties. Together, the statutory requirements of disinterestedness and no interest adverse to the estate "serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994).

35. In order to evaluate whether an attorney is disinterested, Bankruptcy Rule 2016 provides, in pertinent part, that an attorney must disclose his or her connections with all parties in the case.

36. The Firm understands that it was required to disclose the Guaranty in the Factor Declaration and that it did not do so. However, the Firm's failure to disclose this connection was not intentional and, instead, was a result of oversight and neglect.

37. The Firm also submits that this mistake was harmless and that it should not result in retroactive disqualification of the Firm or modification of the Final Compensation Award.

38. While a failure to disclose a connection with an insider along the lines of the Guaranty can result in disqualification or disallowance of some or all of a professional's fees, "[n]either a guarantee of fees by an insider or creditor nor the prior representation of an insider or creditor is a per se reason to disqualify counsel for a debtor. *In re Gluth Bros. Constr.*, 459 B.R. 351, 369 (Bankr. N.D. Ill. 2011); *Tinley Plaza Associates, L.P.*, 142 B.R. at 279 (In the event a court concludes that a law firm acting as a debtor' general bankruptcy counsel was not disinterested, the court has discretion pursuant to § 328(c) to deny the law firm compensation in whole or in part). This is because "[i]t is conceivable that even an interested professional may provide services which are beneficial to the estate. A bankruptcy court should weigh the equities in deciding to deny fees under § 328(c)." *In re Crivello*, 134 F.3d. at 838 (internal citations omitted).

39. Further, courts must consider the disqualification issue on a case-by-case basis in order to reach a fair result. The key issue is whether the firm's undisclosed connection or interest could have or did impair the firm's ability to act with impartiality, even unconscious impartiality. *In re Envirodyne Industries, Inc.*, 150 B.R. 1008, 1017-18 (Bankr. N.D.Ill. 1993).

40. The Firm believes that the Guaranty did not impact its handling of the Case because Hico's and Ms. Isaac's goals of keeping Hico in business were fully aligned and the Firm did not use the Guaranty to obtain any sort of leverage in the Case and it did not provide any preferential treatment to Ms. Isaacs at the expense of creditors or other parties in interest.

41. The estate did have a potential claim against Ms. Isaacs, but the merits of the claim were questionable and in exchange for release of the claim, Ms. Isaacs agreed to fund the

10

case and reorganization, as was reflected in debtor in possession financing order and the plan of reorganization filed with the Court on October 3, 2011, a copy of which is attached as **Exhibit F**.

42. More specifically, the original schedules filed by Hico indicated that there was a $457,664.00 "loan" to Ms. Isaacs on the company's books and that the loan was "under investigation." *See* Dkt. No. 58 at Schedule A. It was listed as being under investigation because Ms. Isaacs denied having received any loans from the company and Neil Isaacs did not believe that she had received any loans either. The Firm was advised and saw internal accounting records indicating that the "loan" to Ms. Isaacs consisted of approximately $209,000 in distributions made to her husband prior to his death, and according to Hico's accountant, these were booked as "loans," and that to the extent Ms. Isaacs received any funds from the company after her husband's death, they too should have been booked as distributions.

43. In addition to the $226,344.39 Ms. Isaacs contributed to Hico during the course of the Firm's representation of Hico in the Case, the proposed plan of reorganization the Firm worked on and filed on behalf of Hico contemplated that Ms. Isaacs would be one of the funding sources for the plan through the "Shareholder Plan Contributions," which term was defined as follows:

> "***Shareholder Plan Contributions***" shall mean the sum of (a) $355,000 that Lila Isaacs shall transfer to the Reorganized Debtor within seven (7) days of the Effective Date to enable to the Debtor to pay Administrative Expense Claims and to make a $250,000 partial pay down on the Class 2 Claim <u>plus</u> (b) the $8,800 per month that the Reorganized Debtor shall be obligated to transfer to the Bank through the Determination Date and, if there is no Revocation Event, the $12,000 per month that the Reorganized Debtor shall be obligated to transfer to the Bank subsequent to the Determination Date until the Allowed Class 2 Claim is paid in full, <u>plus</u>, (c) the Threshold Payments.

*Id*. at Art. 2.2.67 (emphasis in original). The "Threshold Payments" ensured that no matter what happened with the business, unsecured creditors would receive payment of $50,000 over time,

11

which was estimated to be 25% of the unsecured claims that would be allowed. *Id.* at Art. 6.2.

44.     In addition, Ms. Isaacs agreed to fund the "Insider Litigation Claims" against Mark and Lori Isaacs in connection with certain alleged misconduct and also waived her right to recover the $100,000 DIP loan. *See id.* at Art. 1.7 and Art. 6; *see also* Art. 1.4.3 and Art.1.10.2.

45.     The Firm believed that the funding Ms. Isaacs agreed to provide under the proposed plan and what she was providing during the course of the Case was more than fair consideration in exchange for whatever claim the estate may have had against her, and any party in interest that disagreed could object to that settlement in the context of plan confirmation.

46.     As a result, the Firm never understood there to be any sort of conflict between Ms. Isaacs and the Debtor.

47.     And once it became clear that the Collateral Litigation was not going to settle (the Court may recall that it was in mediation for many months) and that Ms. Isaacs was not going to fund a plan of reorganization, the Firm sought to withdraw as Hico's counsel.

48.     Based upon the above, as well as the fact that the Case is now a chapter 7 proceeding, the Firm believes that neither its retention nor the Final Compensation Award should be revoked or reduced.

49.     The Firm has received payment of $35,100 on account of the Final Compensation Award, none of which was paid by the estate, including:

| | |
|---|---:|
| Retainer | $11,150.00 |
| Post-withdrawal payments by Ms. Isaacs (through trust) | $3,500.00 |
| Settlement of Guaranty Litigation with Ms. Isaacs | $20,000.00 |
| Payment by Mark Isaacs as discovery sanction (*see* Supplemental Declaration) | $450.00 |
| **TOTAL:** | **$35,100.00** |

12

50. After deducting out of pocket expenses of $4,523.21, the Firm has recovered $30,576.79 on account of its allowed fees or 26% of its total fees.

51. The Firm recognizes that it made a very serious mistake by failing to disclose the Guaranty and it takes full responsibility for this error. The mistake was the result of neglect and not any intention to mislead or to take advantage of the Debtor or any other party in interest. The Firm believes it worked hard in this Case and that the work performed gave Hico a fighting chance at reorganizing. In the end, the company was not able to sufficiently rebuild its business operations and the Isaacs family was unable to resolve its differences so that the secured creditor could be paid off from the sale of the real estate collateral.

52. The Firm submits that revoking its retention and vacating the Final Compensation Award would be a harsh result in this Case. The Firm believes it provided significant benefit to the estate relating to matters that could not conceivably have been impacted by the existence of the Guaranty, e.g., preparing schedules, complying with the subpoena issued by the Employee Benefits Security Administration and providing extensive assistance to the Administration to help it determine what happened with the Hico 401k plan, and negotiating the use of cash collateral. The Firm believes the value of such benefits exceeds what the Firm has received to date in payment and what it may possibly receive if the Final Compensation Award is allowed to stand and the Firm recovers the fees it is owed.

WHEREFORE, the Firm respectfully requests that the Court enter an order, substantially in the form submitted herewith, affirming the retention of the Firm as general counsel to Hico and the Final Compensation Award.

Dated: April 1, 2013                                  Respectfully submitted,

                                                     THE LAW OFFICE OF WILLIAM J.
                                                     FACTOR, LTD.


                                                     By: /s/ Sara E. Lorber


William J. Factor (6205675)
Sara E. Lorber (6229740)
**THE LAW OFFICE OF**
**WILLIAM J. FACTOR, LTD.**
105 W. Madison St., Suite 1500
Chicago, IL 60602
Tel:    (847) 239-7248
Fax:    (847) 574-8233
Email: wfactor@wfactorlaw.com
        slorber@wfactorlaw.com